UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| OTHERS FIRST INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14 CV 2070 RWS |
| | ) | |
| THE BETTER BUSINESS BUREAU OF | ) | |
| GREATER ST. LOUIS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

After charity Others First hired Rick Frazier's company to run its car donation

program, the Better Business Bureau[1] issued a release warning Missouri consumers to

exercise "caution" when dealing with them because Frazier had been "criticized for alleged

improprieties in running similar programs."   Frazier is a for-profit fundraiser who has

been accused of improprieties while operating car donation programs by at least two other

charities.   The release reports these facts, along with the BBB president's statement that

"Frazier's past problems are reason to be cautious about his newest venture."   The release

also points out that another charity was satisfied with Frazier's operation of its car donation

program, that Frazier had never been a board member of Others First, and that both Frazier

---

[1] "BBB is a non-profit corporation that, inter alia, compiles consumer complaints about businesses, rates businesses on an A through F scale based on various criteria, and makes that information available to consumers through BBB's website. Businesses who meet a certain rating level, comply with BBB's code of conduct, and pay a membership fee can be 'accredited' by the BBB."   *Castle Rock Remodeling, LLC v. Better Business Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 236 (Mo. Ct. App. 2011).

1

and Others First denied that Frazier was the charity's founder.   The release goes on to provide consumers with tips on how to donate a car to charity.   The release never tells consumers *not* to donate to Others First and never states that *Others First* has been accused of improprieties.   *It is undisputed* that Others First hired Frazier's company to run its car charity program and that Frazier was accused of improprieties while managing other charitable car donation programs.   Despite this, Others First filed state law claims against the BBB for tortious interference with business expectancy and injurious falsehood for the BBB's release, claiming that the release made false statements about Others First.   The BBB immediately filed motions to dismiss and/or for summary judgment, contending that it was entitled to judgment as a matter of law because the release is true and contains non-actionable opinions.   Others First has opposed both motions.   Because the issues in both motions are the same and both parties rely on matters outside the pleadings, I will treat the motions as one for summary judgment.   The issues in this case are straight-forward and there are no material facts genuinely in dispute, so summary judgment is appropriate in this case despite the absence of discovery as Fed. R. Civ. P. 1 requires the "just, speedy, and inexpensive determination of every action."   Based on my review of the relevant undisputed facts and the applicable Missouri law under the standards governing summary judgment, I conclude that no reasonable fact-finder could ever find that the BBB stated anything other than the truth and its seemingly well-informed opinions about Others First.

2

To the extent Other First complains about statements made by the BBB about Frazier, it cannot bring such claims.   As such, the BBB is entitled to judgment as a matter of law on all counts of the amended complaint for the reasons set out below.

### Standards Governing Summary Judgment

The standards for summary judgment are well settled.   In ruling on summary judgment, the Court views the facts and inferences therefrom in the light most favorable to the nonmoving party.   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U .S. 574, 587 (1986).   The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but must set forth by affidavit or other evidence specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e).   At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue for trial.   *Anderson*, 477 U.S. at 249; *ASi Industries GmbH v. MEMC Electronic Materials, Inc.*, 2008 WL 413819, *1 (E.D. Mo. Feb. 13, 2008).

### Undisputed Background Facts

Others First solicits car donations nationwide under assumed names including Cars

3

Helping Veterans, Cars Fighting Cancer, Cars to Help Kids, Cars Helping Pets, Cars for

Research, and Cars for Christ.   After learning that Others First was soliciting in St. Louis,

the BBB investigated the charity and issued the release at issue here.   The release is dated

August 2, 2011, and attached as Exhibit B to the amended complaint [#6-2].   It is entitled

"BBB Urges Caution On Others First Car Donation Programs" and states:

> A national charity that is seeking car donations in the St. Louis area has ties to
> a Detroit area businessman who has been criticized for alleged improprieties
> in running similar programs, the Better Business Bureau (BBB) warns.
>
> The BBB advises caution when dealing with Rick Frazier and the charity
> Others First.   Others First is a two-year-old nonprofit that raises money for
> causes, such as disabled and homeless veterans, cancer research, children and
> animals.
>
> In recent months, Others First has mailed solicitations to St. Louis area
> consumers on behalf of an affiliated charity, Cars Helping Veterans
> (www.carshelpingveterans.org).   Advertising flyers mailed throughout the
> bi-state area say the vehicle donations go to help veterans of the U.S. Armed
> Forces.
>
> Michelle L. Corey, BBB President and CEO, said the BBB is concerned about
> Frazier's controversial history with other charitable vehicle donation
> programs.   "Mr. Frazier's past problems are reason to be cautious about his
> newest venture," she said.
>
> Corey also said it appears that a former associate of Frazier, and perhaps even
> Frazier himself, may have potential conflicts of interest over their
> involvement in the Others First donation program.
>
> Frazier and former co-worker Maurice E. Banks recently signed potentially
> lucrative contracts to run vehicle donation programs for the charity.   Frazier
> is described in the media and on the website of an Others First charity as the
> charity's founder, although he denies that role.   Banks is the previous

4

treasurer of Others First.

Frazier's Charity Funding and Banks' Charity Car Brokers are named as fundraising consultants for Others First in several states.   Contracts in Illinois and North Carolina show Others First has agreed to pay Banks and Charity Car Brokers 30 percent of the net profits from the program.

Frazier's problems in the charity arena have been the subject of news reports. The Detroit Free Press reported in 1998 that the Mother Waddles Perpetual Mission charity in Detroit accused Frazier of several improprieties in that donation program.   The newspaper also raised questions about Frazier's involvement with the Charity Motors donation program in Detroit.

Last year, the Virginia-based Military Order of the Purple Heart Foundation alleged in a court suit that an audit found widespread problems with Frazier's role in that program, including self-dealing, illegal practices and destruction of incriminating records.   Frazier denied the claims.

About two years ago, Frazier began operating a car donation program for Vietnam Veterans of America in about a dozen states.   That organization has said it is satisfied with the program.

Records on file with Michigan show that Others First was registered as a nonprofit in September 2009.   The incorporator was listed as David S. Kennedy of West Bloomflied, Mich.

In the months that followed its incorporation, Others First registered several assumed names, including: Cars Helping Veterans, Cars for Research, Cars Fighting Cancer, Cars for Christ, Cars to Help Kids, Cars Helping Pets, and Mikie's Minutes.

Others First is registered to do business in at least eight states – Missouri, Illinois, New York, North Carolina, Washington, Colorado, Arizona and Utah – although its various websites say it accepts donations from all 50 states.

The BBB could not determine how much Others First has raised through its vehicle donation program or how much Frazier and Banks have received for running the program.   But financial information made public by the Military

Order of the Purple Heart Foundation two months ago shows that foundation made $15.9 million from its car donation program in the 11 months ending June 30, 2010, with most of that coming from five states.

Frazier and Banks did not respond to a BBB request for interviews. Kennedy, president of Others First, said in a letter to the BBB that Frazier has never been a board member or officer of Others First and any reference to him as founder is "unauthorized and misguided."   He added that because Banks resigned from the Others First board before signing contracts with the charity, "there never was a conflict of interest."

The BBB has these tips to consumers considering donating a vehicle to charity:
-Verify that the recipient organization is a tax exempt charity.
-Find out how the charity benefits financially from the resale of the car.
-For tax records, take a photo of the car and keep copies of current classified ads or guide value estimates for similar vehicles . . .
-If a car is worth more than $5,000, get a professional appraisal before donating.
-Find out if the charity is registered with your state.
-Check for a BBB Charity Review by going to www.bbb.org or calling 314-645-3300 . . . .

Others First alleges that "the proposed Article was factually inaccurate," although the amended complaint fails to specify the alleged inaccurate statements with particularity.

Others First also alleges that the BBB has continued to republish the release online, and that "the BBB induced Fox News Station, WDAF, Kansas City, to travel to Michigan in order to file a segment entitled: 'Records Show That Veteran's Charity Spends More on Operations Than It Does On Mission.'"   (Doc. # 6 at 5).   Others First complains that the news segment was "littered with errors" and the "clear intent" was to "actively interfere with Others First's ability to do business in Missouri."   (Id.).     In Count I of the amended

6

complaint, Others First alleges that the BBB tortuously interfered with its business expectancy by "publishing a false and misleading article," "manipulating the Google search engine," and by "inducing" the television station to run a story about it for the purpose of helping a BBB member obtain an "unfair and illegal competitive advantage over Others First."   (Id. at 6-7).   Count II seeks injunctive relief enjoining the BBB from any further publication of the release.   Count III alleges that the BBB knowingly published a false and misleading article about Others First to unfairly advantage one of its members.

<u>Discussion</u>

As stated above, Others First's amended complaint does not state with particularity any of the statements in the release alleged to be untrue.   Ordinarily, the Court would simply grant the BBB's motion to dismiss without prejudice to Others First's right to file an amended complaint setting forth the allegedly defamatory statements with sufficient detail so as to pass muster under Fed. R. Civ. P. 12.   In this case, however, Others First has set out all the statements it alleges are defamatory in opposition to summary judgment and in its proposed second amended complaint.[2]   The Court will therefore proceed to consider whether Others First can prevail on any of its claims based upon the statements identified in its opposition papers and proposed amended pleading.

---

[2] Others First submitted a proposed second amended complaint in an attempt to cure its pleading deficiencies, but amendment would be futile as the allegations are the same as those set out in opposition to summary judgment and therefore, for the reasons discussed herein, fail to state actionable claims as a matter of law.   As such, leave to amend will be denied.

7

Both parties agree that Missouri law applies to the instant dispute.   In a claim for injurious falsehood under Missouri law, "one who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity." *Wandersee v. BP Prods. N. Am., Inc.*, 263 S.W.3d 623, 628 (Mo. 2008) (emphasis omitted).   To prevail, Others First must prove: "(1) defendant's intent or constructive knowledge that publication of the false statement would cause pecuniary harm to another, (2) defendant knew the statement was false or acted in reckless for its truth or falsity, (3) defendant published the false statement, and (4) resulting pecuniary loss to plaintiff." *BPSS, Inc. v. Wilhold*, 4:08CV1063, 2009 WL 736693, *4 (E.D. Mo. Mar. 18, 2009). "Defamation analysis applies to the tort of injurious falsehood."   *State ex rel. Diehl v. Kintz*, 162 S.W.3d 152, 156 n.4 (Mo. Ct. App. 2005).   "In order for the words to be actionable, they must refer to the plaintiff and to be understood by others as referring to the plaintiff."   *May v. Greater Kansas City Dental Soc.*, 863 S.W.2d 941, 944 (Mo. Ct. App. 1993); *Castle Rock Remodeling, LLC v. Better Business Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 240 (Mo. Ct. App. 2011) (citing *Sterling v. Rust Communications*, 113 S.W.3d 279, 283 (Mo. Ct. App. 2003) ("In order to be defamatory, a statement must be

8

clear as to the person addressed.")).   If the words are unambiguous as to the person

referred to, the issue is one to be decided as a matter of law.   *May*, 863 S.W.2d at 944-45.

When reviewing whether statements are defamatory on a motion for summary

judgment, "the court must determine whether the statement is capable of having a

defamatory meaning."   *Ribaudo v. Bauer*, 982 S.W.2d 701, 704 (Mo. Ct. App. 1998).

Whether a statement is defamatory and actionable is a question of law.   *Kintz*, 162 S.W.3d

at 155.   In making this determination, "the words must be stripped of any pleaded

innuendo and construed in their most innocent sense."   *Id.*   (citation omitted).   "The

alleged defamatory words must also be considered in context, and the words are given their

plain and ordinarily understood meaning."   *Id.*   (citation omitted).   "Falsity is an element

of a prima facie defamation claim."   *Castle Rock*, 354 S.W.3d at 240 (quoting *Sterling*,

113 S.W.3d at 283).   If the statements are capable of a defamatory meaning, the Court

must then inquire whether one or more privileges shelter the defendant from legal action.

Truth is an absolute defense.   *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996).

Statements of opinion are accorded absolute privilege under the First Amendment, even if

they are made maliciously or insincerely.   *Ribaudo v. Bauer*, 982 S.W.2d 701, 704 (Mo.

Ct. App. 1998).   However, the privilege does not apply when the statement of opinion

implies the existence of undisclosed defamatory facts.   *Id.*   "The test for an ostensible

opinion is whether a reasonable factfinder could conclude that the statement implies an

assertion of objective fact." *Kintz*, 162 S.W.3d at 155 (citation omitted).   To make this

determination – which is also a question of law – the Court examines the totality of the

circumstances to decide whether the ordinary reader would have treated the statement as

opinion.  *Ribaudo*, 982 S.W.2d at 705.   "Neither imaginative expression nor rhetorical

hyperbole is actionable as defamation."   *Kintz*, 162 S.W.3d at 155 (citation omitted).

In opposition to summary judgment, Others First alleges the following statements

are defamatory:

1)  "BBB Urges Caution On Others First Car Donation Programs" (the title of
the release);

2) "The BBB advises caution when dealing with Rick Frazier and the charity
Others First.   Others First is a two-year-old nonprofit that raises money for
causes, such as disabled and homeless veterans, cancer research, children and
animals.   In recent months, Others First has mailed solicitations to St. Louis
area consumers on behalf of an affiliated charity, Cars Helping Veterans
(www.carshelpingveterans.org);"[3]

3) "A national charity that is seeking car donations in the St. Louis area has
ties to a Detroit area businessman who has been criticized for alleged
improprieties in running similar programs, the Better Business Bureau (BBB)
warns;"

4) "Michelle L. Corey, BBB President and CEO, said the BBB is concerned
about Frazier's controversial history with other charitable vehicle donation
programs.   'Mr. Frazier's past problems are reason to be cautious about his
newest venture,' she said;"

5) "Corey also said it appears that a former associate of Frazier, and perhaps

---

[3]  Others First incorrectly cites this statement as "BBB is advising consumers to be cautious when dealing with Detroit area
businessman Rick Frazier and Others First a charity that has been soliciting donations in the St. Louis area," which is not the
actual text of the release.

even Frazier himself, may have potential conflicts of interest over their involvement in the Others First donation program;"

6) "Frazier is described in the media and on the website of an Others First charity as the charity's founder, although he denies that role.   Banks is the previous treasurer of Others First;"

7) "Frazier's problems in the charity arena have been the subject of news reports.   The Detroit Free Press reported in 1998 that the Mother Waddles Perpetual Mission charity in Detroit accused Frazier of several improprieties in that donation program.   The newspaper also raised questions about Frazier's involvement with the Charity Motors donation program in Detroit;" and

8) "Last year, the Virginia-based Military Order of the Purple Heart Foundation alleged in a court suit that an audit found widespread problems with Frazier's role in that program, including self-dealing, illegal practices and destruction of incriminating records."

The Court will address the last two statements first.   There is no ambiguity that the words here refer to Frazier, not Others First.   As there is no dispute that these words are not "of and concerning" Others First and cannot be understood by others as referring to Others First, they are not actionable by Others First as a matter of law.[4]   *See May*, 863 S.W.2d at 944.

As for the first challenged statement, the title of the article is a factor to be considered if the title accurately reflects the contents of the article.   *May*, 863 S.W.2d at 946.   Here,

---

[4] Even if these statements were about Others First, they would still not be actionable as a matter of law because they are true for the reasons set out in the BBB's motion papers.   Others First's contention that these claims made against Frazier were either settled or raised as counterclaims does not make them any less true, especially since the release also states that "Frazier denied the claims."

there is no dispute that the title accurately summarizes the contents of the release, which is to warn consumers to be cautious when dealing with Others First.   There is simply nothing actionable about the title of the release.   As such, it cannot form a basis for an injurious falsehood claim as a matter of law.

The same is true for the second challenged statement. Others First does not dispute that it is a non-profit charity and that is was soliciting donations as described in the release, and as described above there is nothing untrue about the statement that "the BBB advises caution when dealing with Rick Frazier and the charity Others First."   To the extent Others First argues that "advising caution" amounts to a defamatory statement -- and this Court does not find that it does but will assume it only for purposes of deciding this motion -- it is protected opinion and not actionable.   "The test for an ostensible opinion is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact."  *Kintz*, 162 S.W.3d at 155 (citation omitted).   Here, no reasonable factfinder could conclude that an expression of caution conveys anything other than an opinion as it implies no assertion of fact, objective or otherwise, and is not capable of being proved true or false. *See Castle Rock*, 354 S.W.3d at 243 (affirming dismissal of defamation claim based on BBB's "C" rating of business as it is subjective opinion not capable of being proved true or false).   As such, even if it could be considered as having a defamatory meaning, it is protected as opinion under the First Amendment and not actionable as a matter of law.

12

As to the third challenged statement, Others First admits that it was seeking car donations in the St. Louis area and it admits that it hired Frazier and his company to run its car donation program.   However, Others First claims that this statement is "absolutely inaccurate and reckless" because it has no "ties to Mr. Frazier whatsoever in that Frazier was not the founder of Others First."   Stripping the words of any pleaded innuendo and construing them in context, with their plain and ordinarily understood meaning, the statement that Others First has "ties" to Rick Frazier is not capable of a defamatory meaning as a matter of law.   Others First hired Frazier's company to run its car donation program, which is the ordinarily understood meaning of the word "ties" in this context. This statement says nothing about Frazier founding Others First, and it is improper to read this, or any defamatory innuendo, into this statement.   Moreover, to the extent that Others First bases its claim based on the statement that Frazier "has been criticized for alleged improprieties in running similar programs" -- and the Court does not believe it can because, as discussed above, this statement is not about Others First -- it is undisputedly true that Frazier has been "criticized for alleged improprieties in running similar programs."[5] While Frazier (and Others First) may dispute the underlying merits of those criticisms, there can be no doubt that they in fact exist.   The release does not accuse Frazier of any

---

[5] For brevity's sake, and because these statements do not pertain to Others First, the Court has not set out the undisputed facts underlying the accusations against Frazier.   However, they are laid out in detail in the BBB's motion papers (and the release itself), and Others First's attempts to challenge these facts as disputed fails.   Again, that Frazier may contend he has or had valid defenses to these claims and/or settled others does not negate the truthfulness of the fact that these accusations were made, and that is all the release says -- that the accusations were made, not that they are true.

improprieties and in fact reports that Frazier has denied claims of wrongdoing.   That

Others First does not like the fact that the BBB chooses to inform readers that Frazier has

been accused by others of improprieties while running other charitable car donation

programs does not render the statement false or defamatory.

The same reasoning applies to the fourth challenged statement that "Mr. Frazier's

past problems are reason to be cautious about his newest venture."   As the release is

accurately reporting what Corey said, in that respect it is true and not actionable.

However, Others First challenges the underlying content of Corey's statement that Others

First is Frazier's "newest venture" as "unequivocally false and . . . actionable."   Even if I

assume the underlying statement can be read to refer to Others First, these words -- when

stripped of any pleaded innuendo and construed in context with their plain and ordinarily

understood meaning -- are not capable of a defamatory meaning as a matter of law.

Others First hired Frazier's company to run its car donation program, which is the

ordinarily understood meaning of the word "newest venture" in this context.   Again, this

statement says nothing about Frazier founding Others First, and it is improper to read this,

or any defamatory innuendo, into this statement.

The fifth challenged statement -- "Corey also said it appears that a former associate

of Frazier, and perhaps even Frazier himself, may have potential conflicts of interest over

their involvement in the Others First donation program" -- is not actionable as protected

opinion.   Viewing this statement in the totality of the circumstances, a reasonable

factfinder would treat the statement as opinion and conclude that the statement does not

imply an assertion of objective fact.   *Kintz*, 162 S.W.3d at 155; *Ribaudo*, 928 S.W.2d at

705.   Again, as the release accurately reports what Corey said, it is true in that respect and

not actionable.   The underlying statement also does not imply an assertion of objective

fact, as it is qualified by the language itself -- it "appears," "perhaps," and "may have."

When this equivocal language is combined with the attribution of this statement to a

particular speaker, a reasonable factfinder would treat this statement as one of opinion and

not as the assertion of an objective fact.

Moreover, the underlying facts reported in the release that form the basis of Corey's

protected opinion -- and the basis of Others First's sixth challenge -- are true.   The release

states that "Frazier and former co-worker Maurice E. Banks recently signed potentially

lucrative contracts to run vehicle donation programs for the charity.   Frazier is described

in the media and on the website of an Others First charity as the charity's founder, although

he denies that role.   Banks is the previous treasurer of Others First."   Others First does not

challenge the description of the contracts as "potentially lucrative" or deny that Banks was

its previous treasurer.   However, Others First vehemently denies that Frazier is its

"founder," although it admits that he was described as such (albeit "erroneously") in one of

its own press releases.   Again, the release accurately reports how Frazier's role was

described in the media, and it also reports Frazier's denial of that role.   It does *not* assert that Frazier was the founder of Others First, and these words -- when stripped of any pleaded innuendo and construed in context with their plain and ordinarily understood meaning -- are not capable of a defamatory meaning as a matter of law.   The release goes on to inform the reader that "Kennedy, president of Others First, said in a letter to the BBB that Frazier has never been a board member or officer of Others First and any reference to him as founder is 'unauthorized and misguided.'   He added that because Banks resigned from the Others First board before signing contracts with the charity, 'there never was a conflict of interest.'"   As these statements are true, and the BBB's related opinion asserting potential conflicts of interest was based on these disclosed facts, neither the fifth nor the sixth challenged statements are actionable as a matter of law.   *See Castle Rock*, 354 S.W.3d at 242-43 ("Neither the nature of the information provided nor the language used on BBB's website would lead a reasonable person to believe that the rating is a statement of actual fact . . .Although one may disagree with BBB's evaluation of the underlying facts, the rating itself cannot be proved true or false.").   For these reasons, Others First's injurious falsehood claim fails as a matter of law and must be dismissed.

Because Others First's injurious falsehood claim fails as a matter of law, its related tortious interference claim fails as well.   The elements of intentional interference with business expectancy are: 1) a contract or valid business relationship or expectancy; 2)

knowledge by the defendant of the contract or relationship; 3) intentional interference by the defendant which induces the breach of contract or relationship; 4) the absence of justification; and 5) resulting damages.  *May*, 863 S.W.2d at 947.   Because the underlying act must be wrongful, claims of intentional interference based upon defamatory statements fail as a matter of law where there was no defamatory publication.  *May,* 863 S.W.2d at 947; *Castle Rock*, 354 S.W.3d at 245 ("[W]here a tortious interference claim is based upon an alleged defamation, if a plaintiff's defamation claim fails, the tortious interference claim must also fail because the plaintiff cannot establish an absence of justification as a matter of law.").   As the alleged "wrongful act" is the publication of a release that the Court has now concluded is not defamatory as a matter of law, the tortious interference claim likewise fails.  *Id.*     In its opposition papers, Others First attempts to evade summary judgment on its tortious interference claim by arguing that it is also claiming a "restraint on trade."   Others First's amended complaint states no claims for a restraint of trade, nor does its proposed second amended complaint.   Merely alleging in its proposed second amended complaint that the BBB's continued publication of the release is for an improper purpose, which "illegally and improperly restrain[s] trade," does *not* amount to stating a claim under either state or federal antitrust laws.   Moreover, Others First cannot bring its tortious interference claim based on the BBB's continued republication on Google (even if true) of a non-defamatory release or its alleged

17

"inducement" of a television station to run a news story as a matter of law.   Mere dislike

of, or disagreement with, a speaker's point of view or its course of conduct is not a

sufficient basis upon which to state a tortious interference claim.   There is no dispute here

that it was the television station, not the BBB, which aired the complained-of news report,

and there is no allegation or evidence that any spokesperson for the BBB was interviewed

for, or appeared in, the report.   In the absence of any actionable "wrongful" conduct, the

tortious interference claim fails as a matter of law.

Finally, Others First spends a great deal of time and effort decrying the BBB's

motives in publishing the release, claiming that its sole purpose was to unfairly advantage a

competitive charity and one of the BBB's members.   As stated above, statements of

opinion are protected even if made maliciously or insincerely.   *Ribaudo*, 982 S.W.2d at

704.   Here, the BBB's release accurately reported facts and stated its opinions based on

those facts.   If Others First dislikes the BBB's opinions, its remedy lies where it found the

release -- in the free marketplace of ideas -- not in a court of law.   As the release is true and

contains protected opinions, the BBB is entitled to judgment as a matter of law on all

counts of the amended complaint.

Accordingly,

**IT IS HEREBY ORDERED** defendant's motion for summary judgment [#10] is

granted, defendant shall have summary judgment on all counts of plaintiff's amended

18

complaint, and plaintiff's complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that defendant's alternative motion to dismiss [#8]

is denied as moot.

A separate Judgment in accordance with this Memorandum and Order is entered this

same date.


_____

RODNEY W. SIPPEL

UNITED STATES DISTRICT JUDGE


Dated this 24th day of April, 2015.